UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LEROY FRANKLIN,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>T. FELKER, et al,<br><br>　　　　Defendants. | No. 2: 11-cv-2055 KJN<br><br><br>ORDER AND<br><br>FINDINGS AND RECOMMENDATIONS |

I. Introduction

　　Plaintiff is a state prisoner, proceeding without counsel, with a civil rights action pursuant to 42 U.S.C. § 1983. Pending before the court is defendant Hackworth's summary judgment motion. (ECF No. 22.) On June 10, 2013, plaintiff filed a document requesting that the court treat his complaint as his opposition to defendant's summary judgment motion. (ECF No. 37.)

　　When a motion for summary judgment is not opposed, a verified complaint may be considered as an opposing affidavit to the extent it sets forth facts within the plaintiff's personal knowledge and admissible into evidence. Schroeder v. McDonald, 55 F.3d 454, 460 & nn.10–11 (9th Cir. 1995). Accordingly, to the extent appropriate, the court considers plaintiff's verified complaint in evaluating defendant's pending motion.

　　After carefully reviewing the record, the undersigned recommends that defendant's motion for summary judgment be granted.

1

II. Legal Standard for Summary Judgment

Summary judgment is appropriate when it is demonstrated that the standard set forth in Federal Rule of Civil procedure 56 is met. "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

Under summary judgment practice, the moving party always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting then-numbered Fed. R. Civ. P. 56(c).) "Where the nonmoving party bears the burden of proof at trial, the moving party need only prove that there is an absence of evidence to support the non-moving party's case." Nursing Home Pension Fund, Local 144 v. Oracle Corp. (In re Oracle Corp. Sec. Litig.), 627 F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp., 477 U.S. at 325); see also Fed. R. Civ. P. 56 Advisory Committee Notes to 2010 Amendments (recognizing that "a party who does not have the trial burden of production may rely on a showing that a party who does have the trial burden cannot produce admissible evidence to carry its burden as to the fact"). Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Celotex Corp., 477 U.S. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 323.

Consequently, if the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually exists. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to establish the existence of such a factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material in support of its contention that such a

2

dispute exists. See Fed. R. Civ. P. 56(c); Matsushita, 475 U.S. at 586 n.11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 630. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

In resolving a summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. Fed. R. Civ. P. 56(c). The evidence of the opposing party is to be believed. See Anderson, 477 U.S. at 255. All reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. See Matsushita, 475 U.S. at 587. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 586 (citation omitted).

////

////

III. Plaintiff's Allegations

Plaintiff alleges that on October 14, 2007, he participated in the inmate visiting room program. (ECF No. 1 at 8.) Plaintiff received permission to use the restroom. (Id.) While he was in the restroom area, plaintiff alleges that defendant Hackworth, a Correctional Officer, yelled at him to "strip out now." (Id.) Defendant Hackworth told plaintiff that he was required to strip because he came back without permission. (Id.) As plaintiff stripped down, he told defendant Hackworth that he was going to write a 602 grievance against him and a citizen's complaint for making him strip. (Id.) In response, defendant stated, "make sure you spell my name right." (Id.)

After the strip search, plaintiff returned to the visiting room. (Id. at 9.) When visiting hours were over, plaintiff was placed on contraband watch. (Id.) The complaint alleges,

> ...visiting room was over at approximately 2:30 p.m., plaintiff found himself being subjected to more retaliatory criminal practice of defendant Hackworth who operated under the prohibited rule the "code of silence," who was aided by C-Facility Sergeant, and ten other officers who failed to provide plaintiff their names, badge numbers. Plaintiff then found himself being placed on contraband watch...

(Id.)

Plaintiff alleges that defendant Hackworth falsified a confidential report, claiming that confidential information had been received that plaintiff was bringing contraband into the prison. (Id. at 10.)

Plaintiff alleges that defendant Hackworth placed him on contraband watch in retaliation for plaintiff's threat to file a grievance and citizens complaint against him. (Id.)

IV. Legal Standards

Defendant argues that he is entitled to qualified immunity as to plaintiff's retaliation claim.

*Legal Standard for Qualified Immunity*

Government officials enjoy qualified immunity from civil damages unless their conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). In ruling upon the issue of

4

qualified immunity, one inquiry is whether, taken in the light most favorable to the party asserting the injury, the facts alleged show the defendant's conduct violated a constitutional right. Saucier v. Katz, 533 U.S. 194, 201 (2001), overruled in part by Pearson v. Callahan, 555 U.S. 223, 236 (2009) ("The judges of the district courts and the courts of appeals should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand").

The other inquiry is whether the right was clearly established. Saucier, 533 U.S. at 201. The inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition...." Id. "[T]he right the official is alleged to have violated must have been 'clearly established' in a more particularized, and hence more relevant, sense: The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Id. at 202 (citation omitted). In resolving these issues, the court must view the evidence in the light most favorable to plaintiff and resolve all material factual disputes in favor of plaintiff. Martinez v. Stanford, 323 F.3d 1178, 1184 (9th Cir. 2003). Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." Malley v. Briggs, 475 U.S. 335, 341 (1986).

*Legal Standard for Retaliation*

"Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567–68 (9th Cir. 2005). An allegation of retaliation against a prisoner's First Amendment right to file a prison grievance is sufficient to support a claim under section 1983. Bruce v. Ylst, 351 F.3d 1283, 1288 (9th Cir. 2003).

V. Plaintiff's Deposition Testimony

In his deposition testimony, plaintiff describes in more detail the events of October 14, 2007. The court's analysis of defendant's motion is best served by a summary of plaintiff's deposition testimony.

5

1    On October 14, 2007, plaintiff went to the visiting room at C facility at High Desert State
2    Prison ("HDSP").  (Plaintiff's Deposition Transcript at 9.)  When plaintiff arrived at the visiting
3    area, defendant conducted a full body strip search of plaintiff.  (Id. at 13, 17.)  The search took
4    three to five minutes.  (Id. at 23.)  Other inmates also received unclothed body searches prior to
5    entering the visiting area.  (Id. at 24.)  Normally, inmates do not receive body searches before
6    they go into the visiting room.  (Id. at 24-25.)  Normally, inmates receive a pat-down before going
7    into the visiting room.  (Id. at 25.)

8    Plaintiff's visit lasted from 9:00 a.m. until approximately 2:30 p.m.  (Id. at 27.)  Defendant
9    was present in the visiting room during this time.  (Id. at 28.)  When the restroom break was
10   announced during the visiting hours, plaintiff waited in line to be processed to use the restroom.
11   (Id.)  While plaintiff was standing in line, Officer Garrison told plaintiff that he was processing
12   out other inmates, so it would take ten minutes before he could get plaintiff into the restroom.
13   (Id. at 29.)  Officer Garrison told plaintiff that he would come back when he was ready for him.
14   (Id.)  Plaintiff returned to his seat.  (Id.)  About ten minutes later, Officer Garrison opened the
15   door to the rest room area and waved plaintiff back.  (Id.)  Officer Garrison told plaintiff that it
16   was all right for him to use the rest room.  (Id.)

17   Plaintiff proceeded to the restroom.  (Id.)  Defendant Hackworth followed plaintiff back to
18   the processing area after Officer Garrison had waved plaintiff in to use the restroom.   (Id. at 29,
19   32.)  Defendant Hackworth told plaintiff to strip out and to submit to a strip search.  (Id. at 29.)
20   Plaintiff asked defendant why he had to submit to a search.  (Id.)  Defendant Hackworth told
21   plaintiff that he had not had permission to use the restroom.  (Id. at 30.)

22   Plaintiff told defendant Hackworth that he had permission to use the restroom.  (Id. At
23   33.)  Plaintiff told defendant that plaintiff could not have entered the restroom area on his own
24   because the door was always locked.  (Id. at 34.)  Plaintiff could not have entered the area on his
25   own because someone on the other side, i.e., Officer Garrison, had to open the door.  (Id.)
26   Plaintiff told defendant Hackworth that he would write a 602 for his actions.  (Id.)

27   Defendant Hackworth then proceeded to strip search plaintiff.  (Id. at 35.)  This occurred
28   approximately three hours into plaintiff's visit, i.e. at 12:00 p.m.  (Id. at 29.)  The strip search

6

took approximately three minutes. (Id. at 35.) Plaintiff then returned to the visiting area and completed his visit. (Id.)

As plaintiff was leaving the visiting area at around 2:30 p.m., defendant Hackworth approached plaintiff and told him to strip down. (Id. at 35-36.) There were approximately ten other inmates in the area who were also told to submit to a strip search. (Id. at 36.) It was not unusual for inmates to have to submit to strip searches after visiting hours. (Id. at 36.) Defendant Hackworth's search of plaintiff was unusual because it was conducted in an aggressive manner. (Id.) Defendant Hackworth yelled at plaintiff. (Id.) During the search, plaintiff was required to bend at the waist and cough three times. (Id.) Defendant Hackworth felt that plaintiff's first bend was not sufficient, so he made plaintiff do it again. (Id. at 35-36.) Defendant Hackworth felt that plaintiff's second bend was not sufficient, so he made plaintiff do it again. (Id. at 36.) This was the first time that plaintiff had been told by an officer during a strip search that his bends were not sufficient. (Id.) Plaintiff did not notice any other inmates having to bend and cough more than once. (Id.)

After the strip search was over, Officer Sears asked plaintiff if he was ready to return to his building. (Id. at 38.) After plaintiff responded "yes," Officer Sears took plaintiff into a hallway. (Id. at 39.) Approximately ten officers were in the hallway. (Id.) One of them, possibly a sergeant, asked plaintiff if he would be willing to submit to a strip search. (Id.) Plaintiff stated that he had just been strip searched. (Id.) The sergeant asked plaintiff if he would submit to another one. (Id.) Plaintiff then submitted to yet another strip search in front of the ten or so officers and the sergeant. (Id. at 40.) Plaintiff was told by the sergeant that he was required to submit to this strip search because they had information that plaintiff was entering contraband into the facility. (Id.) Defendant Hackworth was not present during this search. (Id.) After plaintiff submitted to the search, he was told that he would be placed on contraband watch. (Id. at 41.) Plaintiff was then taken to contraband watch. (Id. at 42.)

Plaintiff was not given any information as to why prison officials believed he was attempting to introduce contraband into the prison. (Id. at 40.) Plaintiff did not try to obtain information regarding why prison officials believed he was bringing contraband into the prison.

7

(Id. at 41.) Plaintiff did not receive any paperwork explaining why he was being placed on contraband watch. (Id.)

At his deposition, plaintiff was asked why he believed that defendant Hackworth was responsible for his placement on contraband watch. (Id. at 44.) Plaintiff responded,

> Based on the fact that I informed him that I was going to be 602'ing him for discriminating against me and making me strip out when everyone else did not have to strip out, for him basically going out of his way and acting the way he did towards me aggressively in that fashion. So I believe that based on the fact that I informed him that I was going to be filing a 602 complaint, I believe that he retaliated against me by having me placed on contraband watch.

(Id. at 45.)

Plaintiff testified that defendant Hackworth had plaintiff placed on contraband watch because he believed that plaintiff had entered the restroom area without permission. (Id.) Plaintiff believed that defendant Hackworth told the other officers and the sergeant that plaintiff had entered the restroom area without permission. (Id. at 45-46.) Plaintiff testified that it was his understanding from Officer Harrod that he was placed on contraband watch based on an incident between plaintiff and defendant Hackworth. (Id. at 46.) However, plaintiff testified that Officer Harrod did not actually say to him that he was placed on contraband watch because of something defendant Hackworth did. (Id. 49.)

Plaintiff described two alleged prior incidents involving defendant Hackworth. (Id. at 18.) In the first incident, plaintiff sat at the wrong table in the dining hall. (Id.) Defendant Hackworth allegedly aggressively reprimanded plaintiff for sitting at the wrong table. (Id.) This incident occurred between three and six months prior to the strip search incident. (Id. at 19-20.) During the second incident, defendant Hackworth allegedly ordered plaintiff to submit to a pat down search as plaintiff left the chow hall. (Id. at 20.) Defendant Hackworth apparently thought that plaintiff had not spread his feet wide enough for the search, so he kicked the insides of plaintiff's feet to make them go wider. (Id.) Defendant then allegedly proceeded to aggressively pat plaintiff down. (Id.)

Based on the two other encounters with defendant and the strip search incident, plaintiff believed that defendant Hackworth had it in for him. (Id. at 49.)

8

VI. <u>Analysis</u>

    A. <u>Did Defendant Violate Plaintiff's Constitutional Rights?</u>

The undersigned first considers whether, taken in the light most favorable to plaintiff, the facts show that defendant's conduct violated plaintiff's constitutional rights.

Defendant moves for summary judgment on grounds that he took no adverse action against plaintiff. The first element of a retaliation claim is that a state actor took an adverse action against the plaintiff. It is undisputed that defendant is a state actor.

In essence, defendant argues that he did not cause plaintiff to be placed on contraband watch. In particular, defendant argues that no inmate would have been placed on contraband watch for being in an area without permission, as claimed by plaintiff. Defendant also argues that he had no authority, as a correctional officer, to order plaintiff's placement on contraband watch.

At the outset, the undersigned observes that in his declaration submitted in support of his motion, defendant states that he has no recollection of plaintiff or of the incident on which the pending action is based. (ECF No. 22-4 at 3.)

In support of his argument that correctional officers are not authorized to order inmates placed on contraband watch, defendant cites the declaration of Correctional Lieutenant Thompson attached to his opposition. (ECF No. 22-5.) Correctional Lieutenant Thompson works in the Investigative Services Unit ("ISU") of HDSP. (<u>Id.</u> at 2.) The ISU is responsible for investigating crimes at HDSP and for implementing a contraband watch. (<u>Id.</u> at 3-4.) Correctional Lieutenant Thompson states that correctional officers do not have the authority to determine whether an inmate is placed on contraband watch. (<u>Id.</u> at 4.) The determination to be placed on contraband watch must be made at the level of Correctional or Facility Captain or higher. (<u>Id.</u>)

Moreover, according to Lieutenant Thompson, a report that an inmate had walked into an unauthorized area of the prison, without more information, would not be sufficient cause to place an inmate on contraband watch. (<u>Id.</u> at 3.) Inmates are not placed on contraband watch without a reasonable, good faith belief that they are hiding contraband in their bodies. (<u>Id.</u>) For example, an inmate may be placed on contraband watch if his x-ray shows the presence of a foreign object in his stomach or intestines, or if a metal detector indicates that he has a foreign object inside his

1 body. (Id.)

2 Similarly, an inmate may be placed on contraband watch if he is seen placing contraband
3 in to his mouth and swallowing it. (Id.)  Contraband watch is only undertaken when there is
4 substantial evidence that an inmate has secreted or ingested contraband in his body and a prison
5 official at the rank of captain or higher determines the surveillance is necessary to prevent the
6 inmate from introducing that contraband into the prison. (Id. at 4.)

7 Based on the evidence set forth above, the undersigned finds that defendant has met his
8 initial burden of demonstrating that he was not involved in the decision to place plaintiff on
9 contraband watch. For the following reasons, the undersigned finds that plaintiff has not met his
10 burden of establishing that a genuine issue of factual dispute exists regarding defendant's
11 involvement in plaintiff's placement on contraband watch.

12 Plaintiff has presented no evidence disputing defendant's evidence that plaintiff could not
13 have been placed on contraband watch for merely being in an unauthorized area. Plaintiff's claim
14 that he was placed on contraband watch because defendant reported that he was in an
15 unauthorized area is based on unsupported speculation.

16 In the amended complaint, plaintiff also alleges that defendant made a false confidential
17 report on which the decision to place him on contraband watch was based. However, plaintiff
18 does not allege what false information this report contained. In fact, at his deposition plaintiff
19 testified that he was given no information, including paperwork, as to why he was placed on
20 contraband watch. Plaintiff has provided no evidence to support his speculation that defendant
21 prepared a false report.

22 The undersigned also observes that according to plaintiff's deposition testimony,
23 defendant Hackworth was not present when plaintiff was strip searched by the sergeant in front of
24 the ten correctional officers. According to plaintiff, the sergeant made the decision to place him
25 on contraband watch. Plaintiff's speculation that defendant was involved in the decision to place
26 him on contraband watch is undermined by this testimony as well.

27 While evidence of a retaliatory motive might support an inference of defendant's
28 involvement in the decision to place plaintiff on contraband watch, neither plaintiff's complaint

10

1   nor his deposition testimony, provide sufficient evidence of a retaliatory motive.  Retaliatory

2   motive may be inferred from the timing and nature of the alleged retaliatory activities.  See

3   Soranno's Gasco, Inc. v. Morgan, 874 F.2d 1310, 1314–16 (9th Cir. 1989).  Nonetheless, a mere

4   allegation of a retaliatory motive is insufficient to defeat a motion for summary judgment.  See

5   Barnett v. Centoni, 31 F.3d 813, 815–16 (9th Cir. 1994).

6        At his deposition, plaintiff testified that defendant strip searched him three times on

7   October 14, 2007.  However, none of the circumstances of these searches suggest a retaliatory

8   motive by defendant.  Defendant first strip searched plaintiff and other inmates when they arrived

9   at the visiting room.  In other words, defendant did not single plaintiff out for a strip search.

10  Therefore, the first strip search is not evidence of a retaliatory motive.

11       Plaintiff alleges that that he was placed on contraband watch after he threatened to file a

12  grievance against defendant for conducting the second strip search.  Plaintiff provides no

13  evidence to support this speculation.  It is not reasonable to infer that defendant made a false

14  report simply based on plaintiff's threat to file a grievance against defendant after the second strip

15  search.  Plaintiff does not allege that defendant made any statements to him suggesting that he

16  was motivated to retaliate against him for this threat.  In fact, plaintiff alleges that defendant made

17  a joke in response, telling plaintiff to "make sure you spell my name right."  (ECF No. 1 at 8.)

18       Defendant conducted the third strip search of plaintiff at the end of visiting hours.  At his

19  deposition, plaintiff testified that inmates are normally strip searched at the end of visiting hours

20  and that approximately ten other inmates were also strip searched at that time.  While plaintiff

21  testified that defendant made him bend over three times and yelled at him, it is not reasonable to

22  infer that the circumstances of this strip search, absent any physical altercation or even physical

23  contact, suggested a retaliatory motive for defendant.

24       At his deposition, plaintiff testified that defendant "had it in for him" based on two alleged

25  prior incidents.  However, both of these incidents were minor.  It is not reasonable to infer from

26  these alleged minor incidents that defendant "had it in" for plaintiff and was motivated to retaliate

27  ////

28  ////

11

against plaintiff by having him placed on contraband watch.[1]

Plaintiff's case is based on unsupported speculation. Plaintiff was granted an opportunity to conduct discovery in order to support his claim but failed to do so. Plaintiff also failed to file an opposition to defendant's summary judgment motion supported by evidence, choosing instead to rely on his complaint.

For these reasons discussed above, the undersigned finds that defendant should be granted summary judgment.

### B. Were Plaintiff's Rights Clearly Established?

Because the undersigned finds that defendant did not violate plaintiff's constitutional rights, there is no need to reach the second prong of the qualified immunity analysis.

Accordingly, IT IS HEREBY ORDERED that the Clerk of the Court shall assign a district judge to this action; and

IT IS HEREBY RECOMMENDED that defendant's summary judgment motion (ECF No. 22) be granted.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within fourteen days after service of the objections. The parties are

////
////
////
////

---

[1] The record before the court contains no direct evidence regarding the reason for plaintiff's placement on contraband watch. It is clear that plaintiff does not know why he was placed on contraband watch. Defendant has no recollection of plaintiff or the incident. Lieutenant Thompson states that he does not know why plaintiff was placed on contraband watch, and HDSP ISU has no records of an investigation involving plaintiff in 2007. (ECF No. 22-5 at 3.)

12

advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

Dated:  July 15, 2013

frank2055.sj

_____
KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE